**SO ORDERED.**

**SIGNED this 21 day of December, 2006.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARK LETTERMAN, | ) | Case No. 05-60235 |
| | ) | Chapter 13 |
| Debtor. | ) | |

### MEMORANDUM OPINION

This contested matter is before the Court on the objections to debtor's claimed homestead exemption filed by the chapter 13 trustee and creditor Paul Letterman.[1] The Court conducted an evidentiary hearing on June 14, 2006 and at the conclusion thereof directed debtor to amend Schedule C and to provide a description and declaration of that portion of the 1.4 acre tract that he claims exempt as his homestead under the Kansas homestead exemption statute.[2] The Court

---

[1] Dkt. 15, 22 and 27.

[2] KAN. STAT. ANN. § 60-2301 (2005). The homestead exemption provided by the Kansas Constitution is consistent with the statutory homestead provision. *See* KAN. CONST. ART. 15, § 9.

1

thereafter received debtor's Amended Schedule C,[3] a survey of the property,[4] and legal memoranda of the parties[5] and took the matter under advisement. Debtor Mark Letterman ("Debtor") appears by Mark Lazzo. Creditor Paul Letterman ("Creditor") appears by Ted Knopp and the chapter 13 trustee appears in person. Having considered the entirety of the record before it and the written submissions, the Court is ready to rule.

Jurisdiction

The objections to exemption are contested, core matters over which the Court has subject matter jurisdiction.[6]

Findings of Fact

Debtor filed this case on December 12, 2005, about two weeks after his house burned down. In his first Schedule C, Debtor claimed property described only as 5706 S. Broadway, Wichita, Kansas, the address where his house was located, as his exempt homestead.[7] The property in question consists of Lot 2 of the Letterman Second Addition, is located within the city limits and admittedly exceeds one acre in area. Lot 2 is approximately 1.4 acres. The house is subject to a first mortgage held by Equity One .[8]

After the evidentiary hearing and as directed by the Court, Debtor obtained a survey of Lot

---

[3] Dkt. 51.

[4] Dkt. 43.

[5] Dkt. 44, 45, 50, and 56.

[6] *See* Fed. R. Bankr. P. 4003 and 9014; 28 U.S.C. §§ 157(b)(1), (b)(2)(B), and 1334(b).

[7] Dkt. 1, Schedule C.

[8] Dkt. 1, Schedule D. Debtor lists Equity One's claim in the amount of $46,928. Equity One's proof of claim number 7 shows the amount of its claim as $47,090.83.

2 and declared the portion of Lot 2 that he claims exempt as some .57 acres in area ("the Property").[9] Just south of his home (in the southwest corner of Lot 2) is a radiator shop that he rents to one Patrick Rock. Debtor receives a percentage of the profits of the business. The survey limits the radiator shop to a 41 x 91 foot tract (.09 acres). To the east, behind Debtor's home site, sits a mobile home. Debtor receives $450 per month for rental of the mobile home and applies three-quarters of the rental toward property taxes. The balance of Lot 2 is comprised of .77 acres.

Debtor testified that on the eve of Thanksgiving in 2005, he and his wife entered the home and smelled natural gas. Debtor called the gas company and the police; the gas leak was remedied. Debtor and his wife vacated the premises, however, because she was afraid to stay there. They never returned to the house.[10] On November 29, 2005, while unoccupied, the house caught fire, the inside of the structure was gutted and rendered uninhabitable. Debtor admitted that he did not reside in the Property on the petition date.

Debtor failed to disclose the fire loss on his statement of financial affairs.[11] Nor did Debtor disclose potential insurance proceeds from the fire loss as an asset in his schedules or claim them exempt. Debtor made an insurance claim for $75,000 for the house and $30,000 for contents (a total loss). As of the hearing date, the insurance claim had not been settled.

Debtor's chapter 13 plan, filed simultaneously with his petition, calls for Debtor to sell the

---

[9] Dkt. 43. This presumably cures the objections to exemption on the basis that the exemption claimed exceeded one acre.

[10] Debtor moved in with his daughter who lived in Wellington and Debtor's wife, moved in with her mother who lived in Wichita.

[11] Dkt. 1, Statement of Financial Affairs, Question 8.

3

property and use the proceeds to pay his secured and unsecured creditors.[12] In his testimony, Debtor stated that initially he wanted to rebuild the home, but when prompt payment of the insurance claim did not materialize, he decided to sell the property. As is apparent from Debtor's plan, he arrived at this decision before he filed bankruptcy. In March of 2006, Debtor entered into a six month listing agreement with a realtor to sell Lot 2. Debtor has now filed in his bankruptcy a notice of sale in which he proposes to auction the entirety of Lot 2, including the claimed .57 acre homestead, and suggests he will use the proceeds to pay claims.[13] Debtor provided no testimony that he intends to reinvest the sale proceeds to either rebuild the home or to acquire another homestead.

Analysis

Kansas' homestead exemption statute provides, in pertinent part:

> A homestead to the extent of 160 acres of farming land, *or of one acre within the limits of an incorporated town or city . . . occupied as a residence by the owner* or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists . . . .[14]

Creditor and the trustee, as the parties objecting to Debtor's homestead exemption, have the burden of proving the exemption is not properly claimed.[15] The trustee objects to the claimed exemption because Debtor did not reside in the property on the petition date. Creditor objects to the claimed exemption on several grounds: the property is located within the city limits of Wichita and exceeds

---

[12] Dkt. 3, Chapter 13 Plan Dated December 12, 2005.

[13] Dkt. 59. On November 28, 2006 an Order authorizing the auction sale was entered. Dkt. 69.

[14] KAN. STAT. ANN. § 60-2301 (2005).

[15] Fed. R. Bankr. P. 4003(c).

4

one acre, the property is used for commercial purposes (*e.g.* operation of a radiator shop and rental property), and Debtor does not reside in the property.

Debtor's right to the homestead exemption is determined as of the date the bankruptcy petition is filed.[16] Thus, Debtor needed to occupy the property as his residence on the petition date and the property claimed exempt had to be one acre or less in area. Assuming his amendment of Schedule C to declare exempt .57 acre described by the survey is appropriate, Debtor still did not inhabit the Property on the petition date. Debtor's own trial testimony established this fact. At the time of filing Debtor lived with his daughter in Wellington and notified the Court of this change of address.[17] At the time of trial Debtor was living on Meadowview in the Oaklawn district of Wichita.

While Debtor may have an equitable or fictional interest in the potential insurance proceeds from the fire loss, that interest is only exempt so long as he manifests an intent to use them to restore the premises or acquire another homestead in Kansas within a reasonable period of time.[18] Even if this Court liberally construes the homestead exemption in favor of Debtor as it is required to do, Debtor's filings and actions belie the necessary intent.[19] As noted above, Debtor neither identified the potential insurance proceeds as an asset nor claimed them exempt at the time of filing. The Court also notes that Debtor never returned to the home after the November gas leak was "repaired," evidencing a strong intention to abandon the Broadway homestead. Debtor's plan indicates Debtor's

---

[16] *In re Ginther*, 282 B.R. 16, 19 (Bankr. D. Kan. 2002).

[17] Dkt. 14.

[18] *See In re Ginther, supra.* (Debtor who intends to reinvest proceeds from sale of homestead in another homestead may exempt the sale proceeds.).

[19] *Id.* at 18, citing *In re Estate of Dittemore*, 152 Kan. 574, 576, 106 P.2d 1056 (1940); *In re Mueller*, 71 B.R. 165, 167 (D. Kan. 1987), *aff'd* 867 F.2d 568 (10th Cir. 1989).

5

intent as of the petition date to sell the property and apply the sale proceeds to pay claims. The Debtor has since obtained authorization to sell at auction the Broadway property on which his home was formerly located. Thus, according to both his plan and testimony, Debtor intends to use the sale proceeds to pay creditors. This is contrary to the intent necessary to reinvest the proceeds of a homestead for the acquisition of another homestead and retain the exemption.

Debtor relies on the Kansas Court of Appeals opinion in *In re Estate of Fink* to support his argument that he has not permanently abandoned the Property and that the evidence shows he intends to return and occupy the Property as his residence.[20] *Fink* has some factual similarity to the case at bar, but not enough. There, the court held that the homestead claimant did not voluntarily abandon the homestead when she was temporarily forced to vacate the marital home because of her husband's drinking problem. Debtor here involuntarily vacated the property due to the fire and what remained of the homestead was uninhabitable. The key factual distinction between this case and *Fink*, however, is the intent of the homestead claimant. In *Fink,* the claimant testified that she intended to permanently return to the property after her retirement, even though her retirement was several years away. After the claimant's husband died, the house was demolished. But claimant took steps promptly to prepare the property for a new home. She obtained a building permit in her name and cosigned a construction loan to build a new home on the site. The claimant intended to live in the basement of the newly constructed home that would be titled in and also occupied by claimant's daughter and family. By marked contrast, in this case, the Debtor did not testify that he intended to return to the Property or to rebuild his house on the Property. Rather, Debtor testified that he intended to sell the entire lot and use the sale proceeds to pay creditors. There is simply no

---

[20] 4 Kan. App. 2d 523, 609 P.2d 211 (1980).

evidence of his intent to return. This is fatal to Debtor's homestead claim.

The Court finds that Debtor did not occupy the Broadway property on the date of the petition and did not intend to return to the Property. Nor did Debtor intend to reinvest the proceeds of the sale of the Broadway property in another homestead in Kansas or to rebuild the Property. Rather, Debtor proposes to use the sale proceeds to pay creditors and claims in his bankruptcy. For all these reasons, Debtor is not entitled to claim the .57 acre on 5706 S. Broadway or its proceeds as his exempt homestead.

Conclusion

The trustee's and Creditor's objection to debtor's homestead exemption is SUSTAINED on the basis set forth above.[21] The Clerk is directed to set this case for a status conference on confirmation of Debtor's plan.

# # #

---

[21] In light of this Court's determination with respect to the occupancy requirement, it does not reach the other grounds for objection to exemption.